# CONFIDENTIAL GLOBAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Confidential Global Settlement Agreement and Mutual Release (the "Agreement") is entered into by and between QUAIL CRUISES SHIP MANAGEMENT LTD. ("Quail Cruises") and QUAIL TRAVEL GROUP S.A. ("Quail Travel") (collectively, the "Quail Group"); and OPERADORA E AGENCIA DE VIAGENS TUR LTDA. f/k/a AGENCIA DE VIAGENS CVC TUR LIMITADA ("CVC"), SEAHAWK NORTH AMERICA, LLC ("Seahawk"), VALTER PATRIANI ("Patriani") and RODOLFO SPINELLI ("Spinelli") (CVC, Seahawk, Patriani, and Spinelli shall be collectively referred to as the "Second Settling Group" solely for the purpose of this Agreement), and FLAMECK INTERNATIONAL S.A. ("Flameck"); hereinafter the Quail Group, the Second Settling Group and Flameck shall be collectively referred to as the "Parties."

## RECITALS

A.    WHEREAS, Quail Cruises and Flameck are parties to the Share Purchase Agreement dated June 1, 2008 (the "Share Purchase Agreement");

B.    WHEREAS, Quail Travel executed a Guaranty on June 4, 2008 (the "Guaranty");

C.    WHEREAS, a dispute arose between Quail Cruises and the Second Settling Group relating to matters arising from events that involved the Share Purchase Agreement, and as a result, on October 26, 2009, Quail Cruises initiated a civil action against the Second Settling Group in the United States District Court for the Southern District of Florida captioned *Quail Cruises Ship Management Ltd. v. Agencia de Viagens CVC Tur Limitada, Valter Patriani, Seahawk North America, LLC, and Rodolfo Spinelli*, Case No. 09-23248-CIV-HUCK, and on October 24, 2011, CVC and Seahawk asserted counterclaims against Quail Cruises in the same civil action (collectively, the "Litigation");

D.      WHEREAS, a dispute arose between the Quail Group and Flameck relating to the Share Purchase Agreement and the Guaranty, and as a result, on February 7, 2011, Flameck initiated an arbitration against the Quail Group before the International Centre for Dispute Resolution of the American Arbitration Association (the "ICDR") captioned *Flameck International S.A. v. Quail Cruises Ship Management Ltd. and Quail Travel Group S.A.*, Case No. 50 517 T 00094 11 (the "Arbitration");

E.      WHEREAS, the Parties wish to fully and finally resolve any and all claims that were, may have been, or could have been alleged in the Litigation and the Arbitration (collectively, the "Disputes");

NOW, THEREFORE, for good and valuable consideration, including the mutual representations, promises and covenants contained herein, the adequacy of which is hereby acknowledged, the Parties hereto agree as follows:

**1.0     REPRESENTATIONS; EFFECTIVENESS OF AGREEMENT**

1.1     The Parties to this Agreement hereby incorporate the Recitals into and as part of this Agreement, and acknowledge and stipulate that the foregoing recitations are true, accurate and correct.

1.2     This Agreement is effective automatically and immediately upon (i) the presentation of this Agreement to the Spanish *Juzgado Mercantil No. 10 de Madrid* (the "Spanish Court") in the matter of the Concurso de Acreedores de Quail Travel Group S.A. and (ii) the first to occur of (x) a pronouncement by the Spanish Court in some recordable or verifiable form that the approval of the Spanish Court is not required or (y) the approval of the Spanish Court of this Agreement.

**2.0    CONSIDERATION**

2.1    The Second Settling Group covenants and agrees to pay or cause to be paid to the Quail Group the payment amounts in accordance with the procedures set forth on Exhibit A hereto (collectively, the "Settlement Payment"). Upon receipt by the Quail Group of the Settlement Payment in accordance with Exhibit A, the Quail Group shall issue to the Second Settling Group Authorized Person (as defined on Exhibit A) a written confirmation, by e-mail or facsimile transmission, that the Settlement Payment has been received in full by the Quail Group (the "Payment Confirmation"). The Parties shall be entitled to conclusively rely upon the issuance by the Quail Group of the Payment Confirmation as evidence that the Settlement Payment has been paid in full to the Quail Group in accordance with this section 2.1.

2.2    In consideration of the Settlement Payment and of the mutual promises and covenants set forth in this Agreement, the Parties, by execution of this Agreement, agree to enter into the mutual releases and discharges pursuant to section 3.0 below, upon this Agreement becoming effective.

2.3    The Parties agree, acknowledge and represent, by virtue of the above, that each Party has received adequate consideration for entering into this Agreement.

2.4    The Parties agree to cooperate and take any other additional actions or execute any other documents that may be necessary to implement this settlement including the facilitation of the Settlement Payment as provided for in section 2.1 above and Exhibit A.

**3.0    MUTUAL RELEASES AND DISCHARGES**

3.1    Upon this Agreement becoming effective, and except for the right to enforce this Agreement including the collection of the Settlement Payment, the Quail Group, on behalf of themselves, individually and collectively, and on behalf of their representatives, officers, directors, shareholders, employees, agents, partners, principals, current and former parents,

subsidiaries, affiliate corporations, and current and former officers, directors, shareholders, insurers, reinsurers, attorneys, subrogees, successors, heirs and assigns do hereby completely and irrevocably release and forever discharge the Second Settling Group and Flameck, individually and collectively, and their representatives, employees, agents, partners, principals, successors, subrogees, assigns, current and former parents, subsidiaries, affiliate corporations, and current and former officers, directors, shareholders, attorneys, insurers, reinsurers, excess value insurers and claims administrators from any and all claims and rights (including, without limitation, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature and character, known and unknown) that the Quail Group asserted or could have asserted in the Disputes, and any and all other claims and rights (including, without limitation, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature and character, known and unknown) that the Quail Group may have or could have filed or caused to be filed in any court of law or arbitral tribunal, or before any administrative agency, state or federal, or existing prior to the execution of this Agreement against the Second Settling Group and Flameck, individually and collectively, and their representatives, employees, agents, partners, principals, successors, subrogees, assigns, current and former parents, subsidiaries, affiliate corporations, and current and former officers, directors, shareholders, attorneys, insurers, reinsurers, excess value insurers and claims administrators. Upon this Agreement becoming effective, and except for the right to enforce this Agreement including the collection of the Settlement Payment, the Quail Group, their representatives, officers, directors, shareholders, employees, agents, partners, principals, attorneys, successors, subrogees, and assigns, further agree and promise that they will neither bring any further claim, charge, complaint, cross-complaint, action, arbitration or cause of action, against the Second

Settling Group and Flameck, individually or collectively, and/or their parent, subsidiary, and affiliate corporations, their principals, officers, directors, shareholders, agents, employees, attorneys, insurers, reinsurers, claims administrators, agents, successors, subrogees, and assigns based in whole or in part upon any claims, rights, demands, causes of action, or damages released pursuant to this Agreement, nor aid, abet, induce, or encourage any such claims by any person or entity.

      3.2    Furthermore, the Quail Group, on behalf of themselves, individually and collectively, and on behalf of their representatives, officers, directors, shareholders, employees, agents, partners, principals, current and former parents, subsidiaries, affiliate corporations, and current and former officers, directors, shareholders, insurers, reinsurers, attorneys, subrogees, successors, heirs and assigns do hereby completely and irrevocably agree to indemnify and hold harmless the Second Settling Group and Flameck, individually and collectively, and their representatives, employees, agents, partners, principals, successors, subrogees, assigns, current and former parents, subsidiaries, affiliate corporations, and current and former officers, directors, shareholders, attorneys, insurers, reinsurers, excess value insurers and claims administrators from any and all claims and rights (including, without limitation, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature and character, known and unknown) that third parties asserted or could have asserted or could assert in the future against the Second Settling Group and Flameck, individually and collectively, and their representatives, employees, agents, partners, principals, successors, subrogees, assigns, current and former parents, subsidiaries, affiliate corporations, and current and former officers, directors, shareholders, attorneys, insurers, reinsurers, excess value insurers and claims administrators in relation to or arising out the operations of Quail Group or the M/V PACIFIC.

3.3     Upon this Agreement becoming effective, and except for the right to enforce this Agreement, the Second Settling Group and Flameck, on behalf of themselves, individually and collectively, and on behalf of their representatives, officers, directors, shareholders, employees, agents, partners, principals, current and former parents, subsidiaries, affiliate corporations, and current and former officers, directors, shareholders, insurers, reinsurers, attorneys, subrogees, successors, heirs and assigns do hereby completely and irrevocably release and forever discharge the Quail Group, individually and collectively, and their representatives, employees, agents, partners, principals, successors, subrogees, assigns, current and former parents, subsidiaries, affiliate corporations, and current and former officers, directors, shareholders, attorneys, insurers, reinsurers, excess value insurers and claims administrators from any and all claims and rights (including, without limitation, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature and character, known and unknown) that the Second Settling Group and Flameck asserted or could have asserted in the Disputes, and any and all other claims and rights (including, without limitation, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature and character, known and unknown) that the Second Settling Group and Flameck may have or could have filed or caused to be filed in any court of law or arbitral tribunal, or before any administrative agency, state or federal, existing prior to the execution of this Agreement against the Quail Group, individually and collectively, and their representatives, employees, agents, partners, principals, successors, subrogees, assigns, current and former parents, subsidiaries, affiliate corporations, and current and former officers, directors, shareholders, attorneys, insurers, reinsurers, excess value insurers and claims administrators. Upon this Agreement becoming effective, and except for the right to enforce this Agreement, the Second Settling Group and Flameck, their

representatives, officers, directors, shareholders, employees, agents, partners, principals, attorneys, successors, subrogees, and assigns, further agree and promise that they will neither bring any further claim, charge, complaint, cross-complaint, action, arbitration or cause of action, against the Quail Group, individually or collectively, and/or their parent, subsidiary, and affiliate corporations, their principals, officers, directors, shareholders, agents, employees, attorneys, insurers, reinsurers, claims administrators, agents, successors, subrogees, and assigns based in whole or in part upon any claims, rights, demands, causes of action, or damages released pursuant to this Agreement, nor aid, abet, induce, or encourage any such claims by any person or entity.

3.4    The Parties expressly assume the risk that, by entering into this Agreement and the releases contained, they will forever waive claims, causes of action and damages that they do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect their decisions to enter into this Agreement, except damages or claims arising as a result of fraud or misrepresentation contained in this Agreement to induce any Parties to enter into this Agreement.

3.5    The Parties represent and warrant that they are entitled to make the releases herein, and that they have not assigned or otherwise transferred to any person or entity any claims released herein.

3.6    The Parties acknowledge that they have had legal counsel in connection with this Agreement and that they understand the terms and consequences of these Mutual Releases and Discharges, and of this Agreement.

3.7    This Agreement is a compromise of disputed claims and is not to be construed as an admission of liability by any Party, each of which expressly denies any liability. This

settlement is not to be deemed an admission of any act, omission, or damages claim of any Party.

**4.0    DISMISSAL WITH PREJUDICE OF LITIGATION**

4.1    Upon this Agreement becoming effective, (a) Quail Cruises and CVC, Seahawk, Patriani and Spinelli, through their respective counsel of record, shall file with the United States District Court for the Southern District of Florida a Stipulation for Dismissal *with Prejudice* of all Claims and Counterclaims in the pending Litigation, and (b) Quail Group and Flameck shall file with the ICDR a Stipulation for Dismissal of all Claims *with Prejudice* in the pending Arbitration.

4.2    Each Party to the Litigation and the Arbitration shall bear its own costs and attorneys' fees in connection with the Litigation and/or the Arbitration and the settlement of the Litigation and/or the Arbitration.

4.3    Each Party agrees and promises that it will not file or refile or cause to be filed or refiled any charge, complaint, cross-complaint, demand for arbitration, claim, statement of claim, action, or cause of action, which, pursuant to this Agreement, it has dismissed, released, or withdrawn.

**5.0    CONFIDENTIALITY AND NON-DISPARAGEMENT**

5.1    The Parties, their attorneys, representatives, officers, directors, shareholders, employees, agents, partners, principals, attorneys, successors, subrogees, and assigns, agree to maintain this settlement, the terms of this Agreement, and any and all actions to be taken pursuant thereto, in strict confidence, and not to disclose any information regarding this settlement, this Agreement or any actions to be taken pursuant thereto to any other person or third party, unless required by an order of a court having jurisdiction over the party or as required to enforce this Agreement.

5.2     Upon this Agreement becoming effective, and except for the right to enforce this Agreement, the Parties, their representatives, officers, directors, shareholders, employees, agents, partners, principals, successors, subrogees, and assigns, agree not to, directly or indirectly, in any capacity or manner, make, express, transmit, speak, write, verbalize, or otherwise communicate in any way (or cause, further, assist, solicit, encourage, support or participate in any of the foregoing), any remark, comment, message, information, declaration, communication or other statement of any kind, whether verbal, in writing, electronically transferred or otherwise, that might reasonably be construed to be derogatory or critical of, or negative toward, any of the Parties or their representatives, officers, directors, shareholders, employees, agents, partners, principals, successors, subrogees, and assigns.

5.3     The Parties agree that all materials which were disclosed during the course of the litigation and arbitration which were designated "Confidential" by the disclosing party shall remain confidential. Furthermore, within thirty (30) calendar days of the filing of a stipulation of dismissal in both the litigation and arbitration, the Parties shall return or destroy all documents and electronically stored information designated as "Confidential" by the disclosing party.

5.4     The Quail Group represents and covenants that Javier Gomez-Navarro and Alfonso Lopez Perez, shareholders of Quail Travel, the sole corporate parent of Quail Cruises, and Jesus Molina Molina, the Administrator of Quail Travel and authorized representative of Quail Cruises, shall execute and deliver to the Second Settling Group Authorized Person identified in Exhibit A, a Declaration and Acknowledgement declaring the absence of knowledge or information as to any irregular, illicit or illegal activity by the Second Settling Group, a copy of which is attached hereto as Exhibit B.

5.5     The Parties agree that the terms of this Section 5 are a material inducement for the execution of this Agreement. Any disclosure or dissemination in contravention of this Agreement will be regarded as breach of this Agreement and a cause of action shall immediately accrue for damages and injunctive relief. The Parties acknowledge that a violation of Section 5 of this Agreement would cause irreparable and immeasurable damage to the non-breaching Party(s). Accordingly, the Parties agree that the non-breaching Party(s) shall be entitled to injunctive relief and attorney's fees and costs in any court of competent jurisdiction for any actual or threatened violation of Section 5 in addition to any other available remedies.

## 6.0     INTEGRATED AGREEMENT

This Agreement (together with its Exhibits) contains the entire understanding and agreement of the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements, understandings, negotiations, and discussions of the Parties, whether oral or written, relating to the contents hereof. There are no agreements, understandings, restrictions, representations or warranties relating to the contents hereof other than those set forth in this Agreement. The Parties agree that the terms of this Agreement are contractual and not mere recitals. This Agreement may not be altered or modified except by a written instrument executed by all Parties.

## 7.0     GOVERNING LAW

The parties agree that this Agreement is to be governed by, construed in accordance with, and enforced under the laws of the State of Florida, United States of America.

## 8.0     DISPUTE RESOLUTION

8.1     Venue for any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall lie in any court of competent jurisdiction in Miami, Florida, U.S.A.

8.2    Attorneys' fees, costs and expenses shall be awarded to the prevailing party in any action to enforce this Agreement.

## 9.0    DUE AUTHORITY

9.1    The Parties represent and warrant that they have all requisite power and authority to execute, deliver and perform their obligations under this Agreement. The Parties further represent and warrant that the respective signatories to this Agreement have all requisite power and authority to execute this Agreement on behalf of the corresponding Parties.

## 10.0    MISCELLANEOUS

10.1    If for any reason any provision of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement nevertheless shall be construed, performed and enforced as if the invalidated and unenforceable provision had not been included in the Agreement.

10.2    In the event that a dispute arises regarding the construction of this Agreement, the Parties agree that the Agreement was drafted by the Parties jointly, and its terms shall not be construed in favor of or against any Party based upon any rule or convention to construe ambiguities or vagueness against the drafter.

10.3    No waiver of a breach of any provision of this Agreement shall constitute a waiver or breach of any other provision of this Agreement or of a prior or subsequent breach of the same provision.

(The remainder of this page has been intentionally left blank.)

**11.0   COUNTERPARTS/EXECUTION**

This Agreement may be executed in counterparts, including by fax, e-mail or scanned copies by PDF, with the same effect as if all Parties had signed the same document.   All counterparts shall be construed together and shall constitute but one agreement.

**IT IS SO AGREED.**

**QUAIL CRUISES SHIP MANAGEMENT LTD.**

Dated: _July 31st 2012_

By: _____

Printed Name: Jesus Molina Molina

Its:  Attorney-In-Fact and Duly Authorized Representative

**QUAIL TRAVEL GROUP S.A.**

Dated: _July 31st 2012_

By: _____

Printed Name:  Jesus Molina Molina

Its: Sole Administrator

Dated: _July 31st 2012_

By: _____

Printed Name: Angel Miro Marti

Its:  Administrador Concursal/Court Appointed Administrator to Quail Travel Group S.A.

**OPERADORA E AGENCIA DE
VIAGENS TUR LTDA.**

Dated:_____

By: _____

Printed Name: _____

Its: _____
                Title


**SEAHAWK NORTH AMERICA LLC**

Dated:_____

By: _____

Printed Name: _____

Its: _____
                Title


**FLAMECK INTERNATIONAL S.A.**

Dated: _August 24, 2012_

By: _____

Printed Name: __ MARCELO BARBAGELATA

Its: ____ President
                Title

**OPERADORA E AGENCIA DE VIAGENS TUR LTDA.**

Dated:_____    By: _____

Printed Name: _____

Its: _____
                     Title

**SEAHAWK NORTH AMERICA LLC**

Dated: _13 AUG 2012_    By: _____

Printed Name: __RODOLFO SPINALL__

Its: _____DIRECTOR_____
                     Title

**FLAMECK INTERNATIONAL S.A.**

Dated:_____    By: _____

Printed Name: _____

Its: _____
                     Title

**OPERADORA E AGENCIA DE
VIAGENS TUR LTDA.**

Dated: _August 20, 2012_

By: _____

Printed Name: _GUILHERME  PAULUS_

Its: _Sole  Administrator_
　　　　Title

**SEAHAWK NORTH AMERICA LLC**

Dated:_____

By: _____

Printed Name: _____

Its: _____
　　　　Title

**FLAMECK INTERNATIONAL S.A.**

Dated:_____

By: _____

Printed Name: _____

Its: _____
　　　　Title

**VALTER PATRIANI**

Dated:_____          By: _____

                                   Printed Name: _____


**RODOLFO SPINELLI**

Dated: *13 AUG 2012*               By: _____

                                   Printed Name: ___RODOLFO SPINELLI___

**VALTER PATRIANI**

Dated: _August 20, 2013_

By: _____

Printed Name: _Valter Patriani_

**RODOLFO SPINELLI**

Dated:_____

By: _____

Printed Name: _____

EXHIBIT A

SETTLEMENT PAYMENT

The Settlement Payment is the sum of US$5,000,000, to be paid in two installments (each, a "Settlement Payment Installment"), by wire transfer of immediately available funds, free of any withholdings or set-offs whatsoever, to the bank account(s) designated in the written wire transfer instructions to be provided by the "Quail Group Authorized Person" identified below, as follows:

A.    First Settlement Payment Installment:  US$2,500,000.00 within five (5) business days after the date of this Agreement becoming effective.

B.    Second Settlement Payment Installment:  US$2,500,000.00 within thirty (30) calendar days after the date of the First Settlement Payment Installment.

Each of the foregoing payments shall be made as directed formally by e-mail by Jesus Molina Molina (the "Quail Group Authorized Person"), whose contact information is as follows:

| | |
|---|---|
| Address: | Jesus Molina Molina |
| | Quail Travel Group, S.A., Sole Administrator |
| | Alberto Alcocer, No. 46B, 4° |
| | 28016 Madrid |
| | Spain |
| E-mail: | jmolina@quailtravel.es; jmolina@grupombd.com |
| Phone: | +34 (91) 156 93 03 |

The Second Settling Group designates that CVC will be responsible for the Settlement Payment, notwithstanding any division that the Second Settling Group might have established regarding the monies paid in reason of the Settlement Payment. CVC designates Valter Gonçalves as the authorized person (the "Second Settling Group Authorized Person") to receive formal instructions by e-mail from Mr. Molina for the payment of each Settlement Payment Installment. The contact information for the Second Settling Group Authorized Person is:

| | |
|---|---|
| Address: | Valter Gonçalves |
| | GJP Participações S/A |
| | Rua das Figueiras, 474, 7° andar |
| | Bairro Jardim, Santo André/SP |
| | Brazil |
| E-mail: | valter.goncalves@gjp.com.br |
| Phone: | +55 (11) 4468 4841 |

In the event that CVC fails to make the Settlement Payment (or any portion thereof) to Quail Cruises, interest shall accrue thereon at the rate of 6% per annum from the moment the payment is due until the Settlement Payment is paid in full.

**EXHIBIT B**

## DECLARATION AND ACKNOWLEDGEMENT

Each of the undersigned, in their capacities as individuals, as well as on behalf of and in their capacities as shareholders, directors or representatives of QUAIL TRAVEL GROUP S.A. or its wholly owned subsidiary QUAIL CRUISES SHIP MANAGEMENT LTD., hereby declares, acknowledges, represents and warrants that he has no knowledge or information, and knows of no fact that evidences, that any of OPERADORA E AGENCIA DE VIAGENS TUR LTDA. f/k/a AGENCIA DE VIAGENS CVC TUR LIMITADA, SEAHAWK NORTH AMERICA, LLC, VALTER PATRIANI, VPB REPRESENTACOES E PARTICIPACOES LTDA., RODOLFO SPINELLI, or FLAMECK INTERNATIONAL S.A., or any of their respective officers, directors, agents, principals, shareholders, attorneys or representatives, present or former, have been involved in any irregular, illicit or illegal activity in the conduct of their operations or in connection with the business activities of any of them.

Furthermore, each of the undersigned, without retracting the verified allegations of the Amended Complaint, withdraws any claims of fraud and misrepresentation in connection with the lawsuit captioned *Quail Cruises Ship Management Ltd. v. Agencia de Viagens CVC Tur Limitada, Valter Patriani, Seahawk North America, LLC, and Rodolfo Spinelli*, Case No. 09-23248-CIV-HUCK.

#11418387_v4

## AGREEMENT OF WITHDRAWAL, AUTHORIZED REDEMPTION AND RELEASE OF RIGHTS

THIS AGREEMENT OF WITHDRAWAL, AUTHORIZED REDEMPTION AND RELEASE OF RIGHTS (this "Agreement of Withdrawal") is entered into effective as of July , 2012 (the "Effective Date"), by and between VPB Representaçoes e Participaçoes Ltda. ("VPB"), and Quail Travel Group S.A., a Spanish corporation (the "Company").

### Background

VPB is a shareholder of the Company, and desires to transfer, and to have the Company redeem, all of VPB's shares in the Company (the "Shares") to the Company. In consideration of the mutual covenants set forth below and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, VPB and the Company hereby agree as follows:

### Terms

**1.      Redemption; Withdrawal as Shareholder**. Subject to the prior approval of the Spanish *Juzgado Mercantil No. 10 de Madrid* (the "Spanish Court") in the matter of the Concurso de Acreedores de Quail Travel Group S.A., or a pronouncement by the Spanish Court in some recordable or verifiable form that such approval is not required, VPB hereby transfers, assigns, sells, and conveys its entire right, title and interest in and to the Shares to the Company, and the Company hereby redeems the Shares, in consideration of €1.00. VPB hereby irrevocably withdraws as a shareholder of the Company and hereby authorizes the Company to redeem the shares. Without limiting the generality of the foregoing, VPB acknowledges and agrees that VPB has no voting rights, and VPB is not entitled to and has no right to, any distribution or dividend made or declared after the Effective Date, related to the Shares.

**2.      Mutual Release**. In consideration of the transactions contemplated hereby, VPB hereby agrees to forfeit and hereby forever releases the Company, and its shareholders, officers, directors, successors and assigns for and from, any and all loans, subordinated credits and/or capital contributions made by VPB to the Company, and the Company and its shareholders, officers, directors, successors and assigns, hereby release VPB and its shareholders, officers, directors, successors and assigns for and from any claims in relation to the foregoing. Furthermore, the Company agrees to indemnify VPB and its shareholders, officers, directors, successors and assigns for and from any and all claims arising out of VPB and its shareholders, officers, directors, successors and assigns participation in or relationship to the Company.

**3.      Authorized Representatives**. VPB hereby represents and warrants that Valter Patriani is its duly authorized representative, and that this Agreement of Withdrawal has been duly executed and delivered by VPB, and is binding upon VPB in accordance with its terms. The Company hereby represents and warrants that Jesus Molina Molina is its duly authorized representative, and that this Agreement of Withdrawal has been duly executed and delivered by the Company, and is binding upon the Company in accordance with its terms.

**4.      Counterparts**. This Agreement of Withdrawal may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute one and the same agreement. This Agreement of Withdrawal will be effective upon execution and delivery of either manually signed or facsimile or PDF or e-mail scanned signed signature pages.

\* \* \* \* \* \* \* \*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement of Withdrawal as of the date first written above.

QUAIL TRAVEL GROUP S.A.

By: _____

Name: Jesus Molina Molina
Title: Sole Administrator

By: _____

Name: Angel Miró Martí
Title:  Administrador Concursal/Court
Appointed Administrator to Quail
Travel Group S.A.

VPB REPRESENTAÇOES E
PARTICIPAÇOES LTDA.

By: _____

Name:  Valter Patriani
Title: Authorized Representative

#11422828_v3

2

IN WITNESS WHEREOF, the parties hereto have executed this Agreement of Withdrawal as of the date first written above.

QUAIL TRAVEL GROUP S.A.

By: _Jens Wolen_
Name: Jesus Molina Molina
Title: Sole Administrator

By: _____
Name: Angel Miro Mara
Title:   Administrador Concursal/Court
         Appointed Administrator to Quail
         Travel Group S.A.

VPB REPRESENTAÇOES E
PARTICIPAÇOES LTDA.

By: _____
Name: Valter Patriani
Title: Authorized Representative

#11422828_v3

2

IN WITNESS WHEREOF, the parties hereto have executed this Agreement of Withdrawal as of the date first written above.

QUAIL TRAVEL GROUP S.A.

By: _____
Name: Jesus Molina Molina
Title: Sole Administrator


By: _____
Name: Angel Miró Martí
Title: Administrador Concursal/Court
       Appointed Administrator to Quail
       Travel Group S.A.


VPB REPRESENTAÇOES E
PARTICIPAÇOES LTDA.

By: _____
Name: Valter Patriani
Title: Authorized Representative

#11422828_v3

2